IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FLETCHER JAMES ELLIS, JR., #255773,  )
                                    )
        Plaintiff,              )
                                      )
v.                                  )   Case No.: 2:18-cv-65-WC
                                    )
WARDEN HENLINE, *et al.*,        )
                                    )
        Defendants.       )

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Fletcher James Ellis, Jr., an inmate confined in the Elmore County Jail at the time relevant to the complaint. In this case, Ellis challenges the constitutionality of medical treatment provided to him and other conditions of confinement at the jail from October 23, 2017, until submission of the complaint on January 28, 2018. Doc. 1 at 2.

The defendants filed special reports and supporting evidentiary materials addressing the claims presented by Ellis. In these filings, the defendants deny they acted in violation of Ellis' constitutional rights and further argue that this case is due to be dismissed because prior to filing this case Ellis failed to properly exhaust an administrative remedy available to him at the Elmore County Jail addressing the claims presented in the complaint. Doc.

---

[1]All documents and attendant page numbers referenced herein are those assigned by this court in the docketing process.

15 at 6; Doc. 20 at 10–13.  The defendants base the exhaustion defense on Ellis' failure to file grievance appeals regarding his law library request and challenge to the cleanliness of the showers and his failure to file grievances regarding each of the other claims presented in the complaint.  Doc. 20-1 at 5–7.

Upon receipt of the defendants' special reports, the court issued an order providing Ellis an opportunity to file a response to these reports.  Doc. 21.  This order directed Ellis to address "the defendants' arguments that:  1. His claims are due to be dismissed because he failed to exhaust his available administrative remedies [prior to filing this case] as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ('PLRA') . . .; and 2.  He is entitled to no relief on the claims presented herein as he failed to establish that the challenged actions violated his constitutional rights."  Doc. 21 at 1–2 (footnote omitted). The order also advised Ellis that his response should be supported by affidavits or statements made under penalty of perjury and/or other appropriate evidentiary materials. Doc. 21 at 3–4.  The order further cautioned Ellis that unless "sufficient legal cause" is shown "within fifteen (15) days from the date of this order why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) after considering any response as allowed by this order, rule

on the motion in accordance with the law." Doc. 21 at 4 (footnote omitted) (emphasis in the original). Ellis filed an unsworn response on April 27, 2020. Doc. 22.[2]

Pursuant to the aforementioned order, the court deems it appropriate to treat the reports filed by the defendants as motions to dismiss with respect to the exhaustion defense. Thus, this case is now pending on the defendants' motions to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed the defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]").

## II.    STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e with respect to exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643-44 (6th Cir. 1999)). This means that "until such

---

[2]This court declines to consider Ellis' response to the special report in opposing the exhaustion defense because it is not a sworn statement or signed with an averment that it was made under penalty of perjury. *See* 28 U.S.C. § 1746; *see also Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of [a dispositive motion]"); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the pro se inmate plaintiff's unsworn statement] in determining the propriety of [dismissal]"). The court therefore finds that the plaintiff's unsworn response cannot serve to defeat the defendants' properly supported motion to dismiss for a lack of exhaustion.

administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id.* (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before ***filing*** suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison [or county jail] . . . must first comply with the grievance procedures established by the state department of corrections [or county jail] before filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original). The Eleventh Circuit further determined that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998)." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012). This court must therefore "resolve this issue first." *Id.*

When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. "If in that light, the defendant[s] [are] entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant*, 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the

4

> court should make "specific findings in order to resolve the disputed factual
> issues related to exhaustion." *Id*. (citing *Bryant*, 530 F.3d at 1373–74, 1376).

*Myles*, 476 F. App'x at 366.  Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing].  *See* [*Turne*r, 541 F.3d at 1082].  The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record.  *Bryant*, 530 F.3d at 1376."  *Trias*, 587 F. App'x at 535.  Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury [or judge as a trier of fact]."  *Id*.

Upon review of the complaint, the defendants' special reports and the evidentiary materials filed in support thereof, the court concludes that the defendants' motions to dismiss are due to be granted.

## III.   DISCUSSION

Ellis challenges conditions to which he was subjected during a prior term of incarceration at the Elmore County Jail.  In their responses, the defendants adamantly deny they acted in violation of Ellis' constitutional rights and also assert that this case is subject to dismissal because Ellis failed to properly exhaust the administrative remedy provided at the Elmore County Jail prior to filing the instant complaint in compliance with the directives of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C.

§ 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. Generally, a remedy is

"available" when it has "'sufficient power or force to achieve an end,' [or is] 'capable of use for the accomplishment of a purpose[.]'" *Booth*, 532 U.S. at 737.  Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . .  Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage."  548 U.S. at 90–91, 93.  The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  548 U.S. at 83–84; *Bryant*, 530 F3d at 1378 (holding that to exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process."); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (holding that an inmate's belief that administrative procedures are futile or needless

does not excuse the exhaustion requirement).  "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that the Elmore County Jail provides an administrative remedy for inmate complaints in the form of an inmate grievance process.  Doc. 20-11 at 36–39.  In addition, the evidentiary materials properly before the court demonstrate that Ellis had access to the grievance procedure at all times while confined in the Elmore County Jail — i.e., the procedure was available to him throughout his incarceration in the jail.  The grievance procedure allows an inmate to submit grievances to jail personnel with respect to matters occurring during their incarceration at the jail.  Doc. 20-11 at 36 ("[A]ll inmates have the individual ability to bring complaints, concerns, and other issues to the attention of the jail staff.").  The relevant portion of the grievance procedure provides as follows:

> [With the exception of a grievance of an emergency nature, i.e., a grievance warranting immediate attention to prevent a breach of institutional security or serious harm to inmates or staff], grievances are to be made in writing. An inmate with a grievance may request a grievance form . . . from any member of the jail staff.  The staff member shall provide [a] copy of the grievance form to the inmate and take it back from the inmate after a reasonable amount of time has elapsed for the inmate to complete the form. Grievances may be filed on a request form.  All grievances must be filed within fourteen days[] of the incident complained of.
>
> Where a grievance is of an emergency nature, it may be made orally to any staff member.  A grievance is an "emergency" when the subject of the grievance, if left un-addressed, has a strong likelihood of resulting in a breach of security, serious physical harm to any person; and/or serious harm to the health of any person. The determination of whether an inmate's complaint is an emergency is left to the discretion of the staff member responding to the grievance.  As with a written grievance, the staff member receiving an[] emergency oral grievance will attempt to address the problem at his or her

level. If the staff member cannot address the oral grievance, he or she shall elevate the grievance to the next person in the chain of command until it reaches a staff member with the appropriate authority to address the grievance. Once the grievance is addressed, the staff member making the final decision shall document in the inmate's [jail] file the following information: (a) date and time the grievance was made; (b) description of the grievance; (c) action taken if any by the staff member; (d) date and time the inmate was informed of the action taken, if any.  The staff member addressing the grievance will sign this document.

When more than one inmate has the same grievance . . ., each inmate is to submit his or her own grievance.  Group grievances are unacceptable.

If an inmate is unsatisfied with the response to his written or oral grievance, he or she may appeal the decision as follows:

a. **Grievance responded to by any member of the jail staff other than the jail administrator**.  The inmate must, within 24 hours, submit a written appeal to the jail administrator on a separate grievance form.  The appeal must state the nature of the grievance, the action taken, if any, by the jail staff, and the action the inmate wishes the jail administrator to take.  Upon receipt of an appeal, the jail administrator shall determine whether the appeal has merit and take the action, if any, which is appropriate.  Regardless of the decision, the jail administrator shall inform the inmate of the decision.  The jail administrator shall document in the inmate's jail file the appeal decision along with the date and time the inmate was notified.  The jail administrator will sign this document.  If the inmate is dissatisfied with the outcome of the appeal, he or she may, within 24 hours, appeal the decision in writing to the Chief Deputy as set forth [herein].

b. **Grievance responded to by the jail administrator or appeal of an appeal to the jail administrator**.  The inmate must, within 24 hours of the jail administrator's decision, submit a written appeal to the Chief Deputy on a separate grievance form.  The appeal must state the nature of the grievance, the action taken, if any, by the jail staff and/or jail administrator, and the action the inmate wishes the Chief Deputy to take.  Upon receipt of an appeal, the Chief Deputy shall determine whether the appeal has merit and take the action, if any, which is appropriate.  Regardless of the decision, the Chief Deputy shall inform the inmate of the decision either personally, in

writing, or through a member of the jail staff delegated to inform the inmate of the Chief Deputy's decision.  A document shall be placed in the inmate's jail file reflecting the appeal decision and the date and time the inmate was notified.  The Chief Deputy will sign this document.  If the inmate is dissatisfied with the outcome of the appeal, he or she may, within 24 hours, appeal the decision in writing to the Sheriff as set forth in the next paragraph.

c.  **Appeal to the Sheriff**.  The final appeal of a grievance is [to] the Sheriff.  The inmate must within 24 hours of a decision by the Chief Deputy, submit a written appeal to the Sheriff on a separate grievance form.  The appeal must state the nature of the grievance, the action taken, if any, by the jail staff, Jail Administrator, and/or Chief Deputy and the action the inmate wishes the Sheriff to take.  Upon receipt of an appeal, the Sheriff shall determine whether the appeal has merit and take the action, if any, which is appropriate. Regardless of the decision, the Sheriff shall inform the inmate of the decision either personally, in writing, or through a member of the jail staff delegated to inform the inmate of the Sheriff's decision. A document shall be placed in the inmate's jail file reflecting the appeal decision and the date and time the inmate was notified.  The Sheriff or his designated representative will sign this document.

d.  Delegation of Appeal Authority.  The Sheriff, at his discretion, may designate any member of the Sheriff's Department that has not already made a decision regarding the inmate's grievance to act in lieu of the persons [previously] designated in [this section].

Doc. No. 20-11 at 36–39.

The record before the court demonstrates that Ellis had an administrative remedy available to him while confined in the Elmore County Jail.  The evidentiary materials filed by the defendants, including relevant grievance documents, further establish that Ellis failed to properly exhaust this remedy prior to filing this federal civil action.  Specifically, despite the availability of a grievance procedure and his access thereto, Ellis did not appeal the few grievances he filed and failed to file grievances regarding the majority of his claims

for relief in accordance with the jail's grievance procedure.  Ellis' unsworn response cannot serve to dispute his failure to exhaust the grievance process available to him at the jail.  It is likewise clear that the administrative remedy is no longer available to Ellis as he failed to file grievances or appeals within the time required by the grievance process.  Doc. 20-11 at 36–37 (inmate must submit his grievance within 14 days of the incident at issue and must appeal within 24 hours of receiving a response to a grievance).  Moreover, Ellis is no longer incarcerated in the Elmore County Jail.  Dismissal with prejudice is therefore appropriate.  *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (holding that inmate's "federal lawsuits [were] properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## IV.  CONCLUSION

For the above stated reasons, it is ORDERED that:

1.  The defendants' motions to dismiss are GRANTED to the extent the defendants seek dismissal of this case due to the plaintiff's failure to properly exhaust an administrative remedy available to him during his previous confinement at the Elmore County Jail prior to initiating this civil action.

2.  This case is DISMISSED with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for the plaintiff's failure to properly exhaust an administrative remedy on his claims for relief within the time required by the grievance procedure available to him at the Elmore County Jail.

3.  Other than the filing fee assessed in this case, no further costs be taxed herein.

A separate Final Judgment will be entered.

DONE this 5th day of May, 2020.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE